## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROBERT GENTES** | : | |
| **Plaintiff,** | : | |
| | : | **No. 20-cv-01049 (VLB)** |
| **v.** | : | |
| | : | |
| **CATHERINE OSTEN and** | : | **July 27, 2021** |
| **TOWN OF SPRAGUE** | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

### <u>MEMORANDUM OF DECISION STAYING CASE</u>

Before the Court is Defendants' Motion to Dismiss and/or to Stay proceedings in this case based on the prior pending action doctrine. [ECF No. 15]. Defendants ask the Court to dismiss or stay the instant matter based on a prior case pending in the State of Connecticut Superior Court brought by Defendant Town of Sprague against Plaintiff Robert Gentes. *See Town of Sprague v. Gentes*, No. KNL-CV19-6041084-S, Complaint (Conn. Super. Ct. May 13, 2019). Defendants also ask the Court to dismiss Plaintiff's Count V *Monell* claim against the Town of Sprague for failure to state a claim for which relief can be granted. For the following reasons, the instant matter is stayed without prejudice to reopening pending resolution of the related state court proceedings.

### I. STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## II.  ALLEGATIONS

In reviewing a motion to dismiss, the Court considers the allegations of the complaint to be true.  *Hayden*, 594 F.3d at 161.

The Plaintiff, Robert Gentes ("Gentes" or "Plaintiff"), is an individual residing in Lebanon, Connecticut, and is certified by the Connecticut State Department of Education as a School Business Administrator.  [ECF No. 1 ¶ 2].  Defendant Catherine Osten ("Osten") is an individual residing in Sprague, Connecticut, and at all times relevant to the complaint, was the First Selectman for the Town of Sprague.  *Id.* ¶ 3.  She was elected First Selectman in 2007 and served in that capacity continuously until her re-election defeat on November 5, 2019.  *Id.* ¶¶ 3, 123.  She is also a Senator elected to the Connecticut Senate representing District 19 since 2014.  *Id.* ¶ 3.  Defendant Town of Sprague ("Sprague") is a municipality and subdivision of the State of Connecticut.  *Id.* ¶ 4.

Plaintiff was hired by the Town of Sprague Board of Education ("BOE") as "Interim Business Manager" on December 1, 2016.  *Id.* ¶ 6.  "On March 1, 2017, Plaintiff entered into an employment agreement with the BOE," and "accepted the position of Business/Facilities Manager for the BOE and became an employee of the BOE in that capacity commencing on July 1, 2017."  *Id.* ¶ 10.

As Business/Facilities Manager, Plaintiff had the "authority to supervise the business operations of the" Sprague School District ("SSD"), but "had no authority to spend money on behalf of the BOE," "only allowed funds to be expended that were authorized by the [BOE] Superintendent who had the power to approve purchase requisitions and purchase orders," "was not authorized to issue or sign

3

purchase orders," could not "create, monitor or enter purchase orders or invoices into the computerized accounting system," "did not review purchase orders before they were entered into the accounting system and only saw invoices when they were generated in response to purchase orders entered into the computerized financial accounting system by the bookkeeper/Account Payable clerk," "had no authority to approve expenditures of funds that had not been previously accepted and approved by the BOE," and "had no authority to sign checks." *Id.* ¶¶ 13-18.

When Plaintiff was first employed by the BOE, owing to years of financial mismanagement by Defendant First Selectman Osten, "the Town of Sprague and the SSD had been in a state of economic and fiscal decline for ten years," *id.* ¶ 20, as evidenced by:

- "[T]he SSD's funding drastically declin[ing] to one of the lowest funded school systems in the State of Connecticut," *id.*;

- The Town of Sprague "spend[ing] down its capital reserve, engag[ing] infrastructure projects that were only partially reimbursed by the State of Connecticut, and fail[ing] to maintain a sufficient fund balance," which "had been spent down to zero," *id.* ¶¶ 21, 25;

- The Town of Sprague being listed as "the 8th most financially 'at risk' municipality in the State of Connecticut," *id.* ¶ 24;

- The Town of Sprague "incur[ring] $5.2 million in bond debt," *id.* ¶ 26;

- The Town of Sprague's "debt as a percentage of revenue [being] 96.6%, much higher than surrounding towns of comparable size," *id.* ¶ 27; and

- The Town of Sprague's "per capita debt [being] 121.5% of the average debt for municipalities in the State of Connecticut, much higher than surrounding towns of comparable size," *id.* ¶ 28.

In addition, a "2014-2015 Town of Sprague audit," which decried the poor state of the Town's finances, included a passage with the most damning statistics

regarding the Town's finances contained therein, but that passage was removed from the copy of the audit posted on the Town of Sprague's website.  *Id.* ¶¶ 22-23.

Following the start of Plaintiff's employment with the Town, "as a result of the lack of effective leadership by Defendant First Selectman Osten, the Town of Sprague had also over-budgeted its income by $350,000 for the fiscal year 2018 . . . in expectation [of] Education Cost Sharing ('ECS') from the State of Connecticut," which was not forthcoming, and which "Defendant First Selectman Osten urged the BOE, rather than the Town of Sprague, to cover."  *Id.* ¶ 29.  Plaintiff also discovered "grants in excess of $91,000 had been used for improper expenditures and had to be repaid to the State of Connecticut."  *Id.* ¶ 31.

"In February 2017, at the first public meeting to review the BOE budget, Defendant First Selectman Osten, who was also the Chair of the Appropriations Committee in her capacity as State Senator, stated that the BOE should include a new $800,000 Special Education grant to be funded by the State of Connecticut in the budget even though there had been no official action taken by the State Senate to adopt this funding by the state."  *Id.* ¶ 37.  That budget was passed by the residents of the Town of Sprague on June 5, 2017.  *Id.* ¶ 40.  On October 31, 2017, the State of Connecticut budget was passed, and it did not include the $800,000 grant "that Defendant First Selectman Osten insisted the BOE include as part of its" budget.  *Id.* ¶ 45.  Plaintiff then notified the Town of Sprague Board of Finance ("BOF") that "the BOE would have an approximate $800,000 shortfall," *id.* ¶ 46, which caused the BOF to order the BOE to cut that amount from its budget, "which represented 13% of the BOE budget five months into the fiscal year."  *Id.* ¶ 47.

The BOE "never took any action to cut expenses" in response to this direction, but Plaintiff did so, reducing the BOE budget deficit from $800,000 to $500,000 by January 2018, then to $208,020 by April 2018. *Id.* ¶¶ 55-58. The BOE requested that amount from the BOF and the Town of Sprague Board of Selectmen ("BOS"), who "put this request to a vote before a Town of Sprague meeting," but the request was denied by town voters. *Id.* ¶ 59.

At an April 19, 2018 Board of Finance meeting, Defendant First Selectman Osten "threatened the members of the BOE by informing the BOF and the public that BOE members could be held personally liable for overspending pursuant to . . . [Connecticut] General Statues § 7-349," and Plaintiff challenged Defendant First Selectman Osten's claim at that meeting, stating that this statute is "inapplicable" to the BOE. [ECF No. 1 ¶ 61]. "Plaintiff also challenged Defendant First Selectman Osten's statements regarding allocation of grant funding. From the audience, Plaintiff stated that Defendant First Selectman Osten was stating untruths and knew she was being untruthful with the BOF regarding proper allocation of grant funding." *Id.* ¶ 62.

On or about May 10, 2018, an employee of the Town "whose job duties included Human Resources Administration, Information Technology, Bookkeeping, and Accounts Payable, entered invoices totaling over $600,000 in the computerized accounting system, the majority of which represented Special Education placement and transportation costs for ten additional Special Education students that had not been budgeted for in FY2018 because the need for these services . . . was not made known until the academic year was underway . . . ." *Id.*

6

¶ 63.  **"Defendant First Selectman Osten ordered that checks be temporarily held by the BOE business office"** during certain months at the end of 2018 and in early to mid-2019 **"because the Town of Sprague did not have sufficient cash flow to pay those items."**  *Id.* ¶ 66.  **Plaintiff had not been made aware of the invoices, all of which ultimately further increased the BOE deficit from "the known deficit of $208,020" to "more than $800,000," because "the amounts had not previously been encumbered as required by the standard operating protocols in the Town of Sprague which mandated approved purchase orders for all procurement transactions."**  *Id.* ¶¶ 73–74.

Upon learning about the budget-busting invoices, on or about June 7, 2018, plaintiff texted the SSD Superintendent to inform him of the source of the unexpected increase in the BOE deficit.  *Id.* ¶ 75.

Also **"[o]n June 7, 2018, Plaintiff gave the BOE 30 days' notice of his intention to leave the employ of the BOE."**  *Id.* ¶ 83.  **"Plaintiff decided to leave the employ of the BOE because Defendant First Selectman Osten had engaged in personal attacks against Plaintiff that had made Plaintiff's working conditions intolerable. For example, Defendant First Selectman Osten publicly attacked Plaintiff with accusations that Plaintiff was attempting to derail her candidacy for re-election and she called Plaintiff a liar at meetings when he was not present."**  *Id.*

On June 14, 2018, Defendant First Selectman Osten was the source for an article entitled "Officials Call for Closer Look at Sprague's School Budget," published in the Norwich Bulletin, wherein Defendant Osten claimed to be "securing quotes from independent firms for a forensic audit of the schools'

current budget," and claimed that Plaintiff was "one of two people who ha[d] access to the [school's finance] software," implying that he was responsible for "several expenditures that were retroactively entered into the school's finance software." *Id.* ¶¶ 80, 81.

After Plaintiff resigned from his job with the BOE and "[p]rior to the commencement of Plaintiff's employment with the Thompson Public Schools, Defendant First Selectman Osten mailed a derogatory letter to Plaintiff's new employer attempting to interfere with Plaintiff's employment and cause him to lose his job." *Id.* ¶ 89.

At five separate Town of Sprague meetings publicly accessible over the internet and on Facebook Live, Defendant First Selectman Osten "made false and defamatory statements with reference to Plaintiff's functioning as the business manager for the BOE." *Id.* ¶¶ 92, 96, 99 –102, 104, 110.  In particular, she stated, *inter alia*:

- "The facts are that the Business Manager captured your signature and approved those expenses without you really knowing about it . . . I think most concerning is that until the Town got involved in the register part of the checkbook, we were the ones telling the school that they were overspending.  That should not be happening.  The town should not be telling you all that you're overspending your budget." *Id.* ¶ 92(b).

- "Let me repeat something that I have said over 1000 times over the last year.  According to an email from Mr. Gentes, that I have a copy of, that he took out every dime of that 800K out of the budgets.  He said that the BOE would be $600K in the black.  He's talking about 1/3 of the equation.  Everybody knew that grant was not going to happen.  I had this discussion with Mike (Smith), I had this discussion with the BOF.  I also know that the General Assembly didn't include the grant before the end of June.  We need to stop talking about it.  There was no mistake on the regular grants.  Unless the Business Manager was lying to each one of the BOE members.  He said he took that money out of the budget in October of last year.  Someone was approving expenditures without calculating where it would fit in the budget." *Id.* ¶ 96(a).

8

- **"The Business Manager wrote the new job description. The power was given to one person who did not know what he was doing. I'm a little bit worried that the person there had no checks and balances. This was under Bob Gentes. I told the BOE that they were being overspent and I was essentially told by your former business Manager who was vilifying me in emails and in public. He said I didn't know how to add."** *Id.* ¶ 96(b).

- **"The magnitude of the FY2018 deficit, driven largely by an $835,000 overexpenditure of the Board of Education budget, was not recognized until late in the fiscal year. The town is seeking to hold the prior BOE Business Manager accountable for having provided false and misleading financial information to the BOE."** *Id.* ¶ 104.

- **"We've called the FBI on the incident that happened. We have called a forensic auditor here to go over the books to find out what happened. And we have ultimately ended up with a lawsuit for violation of contract against the Business Manager. Because what he did was he set up each and every one of the people here[] to pay for his mistake. To pay for his mistake."** *Id.* ¶ 112(b).

On May 13, 2019, the Town of Sprague commenced a lawsuit against Plaintiff in the Connecticut Superior Court, "claiming that Plaintiff had overspent the BOE budget in violation of a contractual and fiduciary relationship with the Town of Sprague. In fact, Plaintiff's employment agreement was entered into with the BOE and Plaintiff had no contractual relationship, duty, or obligation to the Town of Sprague." *Id.* ¶ 105. The lawsuit also set forth a "cause of action against Plaintiff based on Connecticut General Statutes § 7-349, a statute which prohibits 'officers' of board of finance from spending in excess of appropriations." *Id.* ¶ 106. "After the lawsuit was filed, Defendant First Selectman Osten wrote a letter that notified Plaintiff's employer, the Thompson Public Schools, of the lawsuit that she had caused the Town of Sprague to file against Plaintiff, a lawsuit that was riddled with false allegations, in another attempt to have Plaintiff fired." *Id.* ¶ 107.

"On June 1, 2019, the Norwich Bulletin[] published an article entitled 'Sprague Finances in $1M Hole,' in which Defendant Osten stated that 'school officials didn't know what was happening' with the BOE budget deficits, 'because Robert Gentes, the school business manager at the time, didn't tell them.'" *Id.* ¶ 113.

During "October 2019, Defendant First Selectman Osten ran for re-election as First Selectman for the Town of Sprague," and distributed campaign literature "to the residents and registered voters in the Town of Sprague," stating that the Town brought its lawsuit "against Plaintiff 'for overspending the Board of Education budget by 13% and telling no one.'" *Id.* ¶¶ 116-18. The literature also stated that:

- "When the School Business Manager illegally spent $835,000 of Sprague taxpayers' money without permission, [Defendant] Cathy [Osten] held him accountable, took him to court, and found solutions: Sued the School Business Manager to get our money back."

- "When I learned that someone overspent the education budget by $835,000, I was outraged – so we took him to court."

- "Sued the School Business Manager when he illegally overspent taxpayer money, and held people accountable for their mistakes."

*Id.* ¶ 119.

"Plaintiff has suffered physically and emotionally and will continue to suffer in the future in response to the attacks by Defendant First Selectman Osten with symptoms ranging from insomnia and weight gain to elevated blood pressure." *Id.* ¶ 131.

### III.     CAUSES OF ACTION

Plaintiff asserts a cause of action against Defendant Osten for violation of the equal protection clause in violation of the Fourteenth Amendment to the United States Constitution because "Defendant Osten selectively used the powers of the First Selectman's Office of the Town of Sprague to punish Plaintiff for the budgeting and spending issues when Defendant Osten herself [and others] were responsible for the state of the BOE finances."  [ECF No. 1 ¶¶ 1-137 (Count I)].

Plaintiff asserts a cause of action against Defendant Osten for violation of the First Amendment because "Defendant Osten violated Plaintiff's First Amendment right to speak as a citizen on a matter of public concern . . . by retaliating against Plaintiff and the actions she took would dissuade a reasonable person from engaging in such speech."  *Id.* ¶¶ 1-140 (Count II).

Plaintiff asserts a cause of action against Defendant Osten for procedural due process violations of the Fourteenth Amendment because "Defendant Osten did [not] provide or allow Plaintiff the opportunity to clear his name in any name-clearing hearing before [Defendant Osten's] false and stigmatizing statements were made," thereby violating "Plaintiff's liberty interest in his reputation."  *Id.* ¶¶ 1-137 (Count III).

Plaintiff asserts a cause of action against Defendant Osten for substantive due process violations of the Fourteenth Amendment because "Defendant Osten used the powers of her office to subject Plaintiff to a pattern of harassment intended to punish Plaintiff for the budgeting and spending issues at the BOE and in order to deflect criticism from her for the consequences of her failures which

harmed the public, punish Plaintiff for previously exposing her culpability, deter Plaintiff (or anyone else) from speaking out publicly against her, and assist her in her reelection campaigns," which "violates Plaintiff's liberty interest in his reputation and shocks the judicial conscience." *Id.* ¶¶ 1-136 (Count IV).

Plaintiff asserts a cause of action for *Monell* liability against Defendant Town of Sprague because "First Selectman Defendant Osten is the highest ranking official in the Town of Sprague with final authority to establish municipal policy and did so in taking the actions represented by the claims set forth in Counts One through Four of this complaint," which "violated Plaintiff's constitutional rights protected by the First and Fourteenth Amendments." *Id.* ¶¶ 1-8 (Count V).

Plaintiff asserts a state law cause of action for defamation against Defendant Osten because "Defendant Osten has published false information regarding Plaintiff relating to his integrity and competence in the performance of his duties," which "included, among other things, claims related to Plaintiff's integrity and lack of skill or competence in his profession," which "Defendant Osten knew . . . were false." *Id.* ¶¶ 1-138 (Count VI).

Plaintiff asserts a state law cause of action for false light invasion of privacy because "Defendant Osten's false and defamatory claims were widely distributed to the public" and "[t]he false impression Defendant Osten created of Plaintiff as a manipulative, under-handed, lying, incompetent Business Manager who acted illegally in spending taxpayer money would be and is highly offensive to a reasonable person." *Id.* ¶¶ 1-141 (Count VII).

Plaintiff asserts a state law cause of action for intentional infliction of emotional distress because "Defendant Osten used the powers of her office to punish Plaintiff by making false, public statements accusing Plaintiff of lack of competence and integrity and asserting illegal activity in public meetings" and "attempted to interfere with Plaintiff's present employment by sending letters trying to get Plaintiff fired," which "were extreme and outrageous [actions] and [were] designed to cause Plaintiff [to] suffer severe emotional distress and Plaintiff suffered severe emotional distress because of Defendant Osten's extreme and outrageous conduct." *Id.* ¶¶ 1-138 (Count VIII).

## IV.    TOWN OF SPRAGUE STATE COURT ACTION

As mentioned, on May 13, 2019, the Town of Sprague sued Plaintiff in Connecticut Superior Court. *Town of Sprague v. Gentes*, No. KNL-CV19-6041084-S, Complaint (Conn. Super. Ct. May 13, 2019).

The Complaint alleges that Plaintiff was employed as an interim, independent contractor business manager starting November 30, 2016. *Id.* ¶ 5. As interim business manager, Plaintiff's duties included "[p]repar[ing] balance sheets, profits and loss statements, budget versus actual and other financial reports," "[r]eport[ing] finances to management and offer[ing] suggestions about resource allocation," and other financially related tasks. *Id.* The Complaint then alleges that "[f]ollowing commencement of and during Gentes' engagement pursuant to said November 30, 2016 interim arrangement, it was discovered by the Town that the [BOE] budget was overspent, and therefore Gentes, through his acts, omissions or misconduct breached the Interim Contract." *Id.* ¶ 6.

13

The Complaint then alleges that Plaintiff entered into a written employment contract as the Town of Sprague's business and facilities manager on March 1, 2017, for a three-year term of employment commencing on July 1, 2017. *Id.* ¶ 7. As business and facilities manager, Plaintiff's duties included "[c]ontrol[ing] all funds and accounts for further certification by outside certified public accountants contracted by the [BOE]," "[a]ssist[ing] in the preparation and presentation of the annual budget," "[p]repar[ing] fiscal reports to present to the [BOE]," and other financially related tasks. *Id.* ¶ 11. The Complaint alleges that "[i]n 2018, the Town discovered that its 2017-2018 fiscal year appropriation made to the [BOE] had been overspent during the term of Gentes' employment," and "numerous signed checks for purported [BOE] expenses incurred during the term of Gentes' employment as said business and facilities manager had been placed in a desk drawer at [BOE] facilities rather than being mailed or delivered to various contractors, suppliers and other payees." *Id.* ¶¶ 12-13. After noting that Plaintiff resigned as busines and facilities manager on July 7, 2018, the Complaint asserts that Plaintiff, "through his acts, omissions and/or misconduct," breached his employment contract by not "properly control[ing] all of the [BOE's] fund and accounts," by not "properly direct[ing] and control[ing] the business operations of the District," by not "properly provid[ing] sound fiscal management in all business related aspects of the District," and in other ways. *Id.* ¶ 15.

The Complaint also alleges a cause of action for breach of fiduciary duty, in that "the Town justifiably placed a unique degree of trust and confidence in Gentes, giving rise to a fiduciary duty," but "[d]uring the term of Gentes [sic] employment

under the Contract, Gentes failed to 'control all of the [BOE's] fund and accounts,' 'supervise the accounts receivable and/or the accounts payable,' [and] 'provide sound fiscal management[,]' which 'thereby breach[ed] his fiduciary duty(ies) to the Town.'"  *Id.* ¶¶ 1-20 (Second Count).

The Complaint alleged a cause of action for violation of Connecticut General Statue § 7-349 for Plaintiff's "expend[ing] . . . money . . . in excess of the appropriations made by the Town to the [BOE]."  *Id.* ¶¶ 1-18 (Third Count).

Finally, the Complaint alleges a cause of action for negligence, in that Plaintiff "failed to perform one or more of the duties" required of him as busines and facilities manager.  *Id.* ¶¶ 1-18 (Fourth Count).

In answering the Complaint on January 15, 2020, Plaintiff denied breaching his contract as business manager, denied liability for the other causes of action, and entered various special defenses to the asserted causes of action.  No. KNL-CV19-6041084-S, Dkt. 114.00. (Answer) (Conn. Super. Ct. Jan. 15, 2020).

On June 15, 2021, Plaintiff moved for summary judgment on all counts, "since there is no genuine issue of material fact and Gentes is entitled to judgment as a matter of law."  *Id.*, Dkt. 138.00 at 1.  Plaintiff asserts that "there is no evidence that Gentes breached the employment agreements, as alleged in the Complaint," "Gentes did not have or breach a fiduciary relationship with the Town" and "did not advance any personal interests to the detriment of the Town, engage in fraud or self-dealing, or have a conflict of interest in his roles with the Sprague Public Schools," "there is no evidence that he expended or entered into contractual liabilities in excess of the BOE's appropriation for fiscal year 2017-18" in violation

15

of state statutes, and "regarding the Fourth Count of the Complaint, alleging negligence, Gentes is entitled to governmental immunity. Additionally, expert testimony is necessary to establish the applicable standard of care, and the Town has not disclosed an expert witness on this issue." *Id.* at 1-2.

## V.    DISCUSSION

Defendants move to dismiss and/or stay this action "until after the Superior Court has resolved the claims alleged by the Town of Sprague against Robert Gentes." [ECF No. 15 at 1]. Specifically, "the interests of justice and judicial efficiency dictate that the prior pending action doctrine be applied to this matter, which involves virtually identical parties, and arises from the same set of underlying facts as the Town's first-filed action in the Superior Court. If this action is not dismissed, it should alternatively, and at the least, be stayed until the resolution of the claims in the first-filed state court action." *Id.* at 2.

Defendants note that all four claims in the pending state case against Plaintiff "assert causes of action arising from plaintiff's alleged mishandling and overspending of the funds allocated to the BOE—which, in the present federal case, [Plaintiff] alleges were included in the BOE budget at the recommendation of Defendant Osten." *Id.* at 8-9. Regarding the instant federal matter, Defendants state that "all the claims in the present action stem from the same underlying circumstances related to the FY2018 BOE budget shortfall underpinning the Town's parallel state court action against plaintiff." *Id.* at 9.

In light of that, Defendants argue that the Court should dismiss this action pursuant to the "prior pending action doctrine," which, because of "the pendency

of the Town's first-filed action against plaintiff[,] warrant[s] dismissal of this action." *Id.* at 10.  Citing several Connecticut Supreme Court cases, Defendants argue that the prior pending action doctrine "has evolved as a rule of justice and equity," *id.* (quoting *Halpern v. Board of Educ. Of City of Bristol*, 196 Conn. 647, 652 (1985)), that "permits the court to dismiss a second case that raises issues currently pending before the court." *id.* (quoting *Bayer v. Showmotion, Inc.*, 292 Conn. 381, 395 (2009)).   "The doctrine is designed 'to prevent unnecessary litigation that places a burden on our state's already crowded court dockets'" *id.* (quoting *Showmotion*, 292 Conn. at 396), and "derives from a court's inherent power to control its docket." *Id.* at 12 (citing *Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1012 (E. D. Cal. 2011)).  *Ellison Framing*, Defendants note, quoting Wright & Miller, stated that "[t]he court's authority to hear 'motions to stay and motions to dismiss because another action is pending' lies in the 'inherent power of a court to regulate actions pending before it.'"  *Id.* (quoting *Ellison Framing*, 805 F. Supp. 2d at 1012 (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360 (3d ed. & Supp. 2010)).

Defendants cite the "framework for application of the prior pending action doctrine," calling it "well settled":

> [T]he trial court must determine in the first instance whether the two actions are: (1) exactly alike, i.e., for the same matter, cause and thing, or seeking the same remedy, and in the same jurisdiction; (2) virtually alike, i.e., brought to adjudicate the same underlying rights of the parties, but perhaps seeking different remedies; or (3) insufficiently similar to warrant the doctrine's application.  In order to determine whether the actions are virtually alike, we must examine the pleadings . . . to ascertain whether the actions are brought to adjudicate the same underlying rights of the parties . . . .

**17**

*Id.* at 11 (quoting *Showmotion*, 292 Conn. at 397-98).

"Importantly," according to Defendants, "the parties in the two suits need not be identical; they need only share sufficient congruence of interests." *Id.* (citing *Leptha Enters., Inc. v. Longenback*, No. 90 Civ. 7704 (KTD), 1991 WL 183373, at \*3 (S.D.N.Y. Sept. 9, 1991) and other cases holding same). "Moreover," assert Defendants, "[w]hen it is possible that, through amendment, each action may contain all of the issues and parties presently contained in either action, the continuation of the first action to be filed is favored." *Id.* at 11-12 (quoting *Holliday v. City of Newington*, No. 3:03-cv-01824 (SRU), 2004 WL 717160, at \*1 (D. Conn. Mar. 19, 2004) (citing *Hammett v. Warner Bros. Pictures*, 176 F.2d 145, 150 (2d Cir. 1949)).

Under this legal framework, Defendants argue that "the parties in both the first-filed state court action and the present action share sufficient congruence of interests in that the parties' competing claims are interrelated and, in some respects, hinge on the resolution of a parallel claim. Accordingly, the parties are sufficiently similar to warrant the prior pending action doctrine's application in this case." *Id.* at 13. Moreover, Defendants argue, both the state and federal cases "boil down to requiring a determination of (1) what happened to cause the $800,000 budget deficit, and (2) who is the party responsible." *Id.* And, "if it occurs that the state court determines plaintiff is indeed liable to the Town on any of its claims against him, plaintiff's federal claims are likely eviscerated, as truth is a defense to the claims asserted against Defendant Osten with regard to the statements she made about him that he alleges are 'false.'" *Id.* Thus, according to Defendants, the cases "go hand in hand" and "pursuant to the prior pending action doctrine," the

Court "should dismiss and/or stay the present action until the resolution of the state action." *Id.* at 13-14.

Regarding the stay option, Defendants term that a potentially "more equitable avenue," since "a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy," *id.* at 14 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995)), but Defendants note that despite this, "many courts have decided to dismiss actions without prejudice." *Id.* (citing *Lexico Enters., Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 222 (E.D.N.Y. 2010)).

In sum, Defendants state that "[b]ecause there is a possibility that the state court's determinations may not resolve all issues presented here, however, a stay of this case would be the most prudent course of action," *id.* at 14-15 (citing *Baker Indus., Inc. v. Cerberus Ltd.*, 549 F. Supp. 312, 315 (S.D.N.Y. 1982)), and argue that "it goes without saying that judicial resources will be necessarily wasted if these two cases are permitted to proceed alongside each other, as parties will engage in duplicative discovery and the court's dockets will needlessly be clogged." *Id.* at 15 (citing *IT Source, LLC v. Yash Technologies, Inc.*, No. 3:07-cv-01140 (PCD), 2007 WL 9753188, at *2 (D. Conn. Dec. 19, 2007)).

Pausing first to note that "Defendants' motion does not argue that any of the counts against defendant Osten should be dismissed because Plaintiff has failed to state a claim," Plaintiff urges the Court to "swiftly reject Defendants' arguments because the prior pending action doctrine does not apply when there are federal

claims pending in federal court and the other lawsuit is a state court action devoid of federal claims." [ECF No. 19 at 2]. That is so, Plaintiff argues, because "it is well-established that the prior pending action doctrine only applies 'where there are two identical or similar actions contemporaneously *pending in two federal courts*, for the reason that as between federal courts . . . the general principle is to avoid duplicative litigation.'" *Id.* at 7-8 (quoting *Cupe v. Lantz*, 470 F. Supp. 2d 128, 132 (D. Conn. 2007) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (emphasis partly in *Cupe*, partly added in Plaintiff's Memorandum). Also, Plaintiff argues, "[a] district court may stay or dismiss a suit that is *duplicative of another federal court suit* as part of its general power to administer its docket." *Id.* at 8 (quoting *Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006) (emphasis in Memorandum). Thus, Plaintiff's position is that "[t]he prior pending action doctrine does not apply when a federal court has jurisdiction over a case based on the presence of a federal question and there is also an action pending in state court," *id.* (citing *Cupe*, 470 F. Supp. 2d at 132 and *AM Broadband, LLC v. First Fin. Ins. Co.*, No. 3:08-cv-00378 (CFD), 2009 WL 353493 (D. Conn. Feb. 10, 2009)), and "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817). Plaintiff asserts further that

> Defendants have not cited a single case in which a federal court has dismissed or stayed a federal court action involving federal constitutional claims based on the prior pending action doctrine because of the pendency of a separate lawsuit in state court in which no federal claims were at issue. The prior pending action doctrine simply does not apply in such situations, particularly where, as here,

> **Plaintiff's federal court complaint alleges federal questions and violations of his federal constitutional rights and Plaintiff has not asserted any claims against either Defendant Osten or the Town in the state court proceeding.**

*Id.* at 8-9.

Additionally, Plaintiff argues that the factual basis, in addition to the legal basis, fails to support dismissal because:

- **"In the federal court case, Mr. Gentes has brought claims against Defendant Osten and the Town of Sprague alleging that Osten and the Town violated his federal constitutional rights. In the state court case, Mr. Gentes has not asserted any causes of action against Defendant Osten or the Town of Sprague. Defendant Osten is not even a named party in the state court lawsuit. Instead, the state court lawsuit is limited to frivolous state law claims that the Town of Sprague filed against Mr. Gentes."**

- **Plaintiff's federal court lawsuit "alleges numerous acts by Defendant Osten which he claims violated his rights under federal and/or state law." "Thus, the state court proceeding will not only fail to adjudicate any of Plaintiff's claims that are asserted in this case, but the state court proceeding will also not address most of the actions by Defendants which Plaintiff claims violated his federal constitutional rights, and which are identified in his federal court complaint."**

[ECF No. 19 at 9-10]. Plaintiff sums up: "A comparison of Plaintiff's federal complaint and the state court proceeding renders it obvious that the state court lawsuit will not determine all of the controlling issues in this case. The state court proceeding will certainly not adjudicate any of Plaintiff's federal constitutional claims. Therefore, even if the application of the prior pending action doctrine was not barred by virtue of the fact that the other proceeding is pending in state court, the prior pending action doctrine still would not apply because of the differences between the cases." *Id.* at 10.

Plaintiff also argues that a stay is inappropriate "because Plaintiff's right to pursue his federal constitutional claims and conduct discovery in support of those

claims should not be held hostage by the pendency of a vexatious lawsuit filed against him by the Town in state court." *Id.*

Defendants reply that "[w]hile it is true that in Connecticut, unlike in most states, the [prior pending action] 'doctrine is applicable where there are two identical or similar actions contemporaneously pending in two federal courts,'" [ECF No. 21 at 1-2 (quoting *Cupe*, 470 F. Supp. 2d at 132)], and that "under the related but inapplicable doctrine of abstention plaintiff cites in his Opposition; see Opp., p. 8; 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction,'" *id.* at 2 (citing *Colorado River*, 424 U.S. at 817), "there is no express prohibition of the prior pending action doctrine's application.  In other words, the prior pending action doctrine is not required to be applied here, but its application is not prohibited." *Id.*  Thus, Defendants argue, "[p]articularly, in light of the fact that the doctrine is one of equity; and given that the parties, facts, and issues underlying both cases are sufficiently similar, this Court should exercise its discretion to dismiss and/or stay this action." *Id.* (citing Defendants' Motion to Dismiss at 10).

This is especially so, Defendants argue, since "our law does not require strict identity of the parties, but instead, requires that the parties share a sufficient congruence of interest, which is present here." *Id.* at 2-3 (citing *Leptha Enters.*, 1991 WL 183373, at *3 (S.D.N.Y. Sept. 9, 1991)).  In addition, Defendants argue that Plaintiff's claim that the state court action will not determine all of the controlling issues in this case is "not true" because if the state court determines Plaintiff is liable, "plaintiff's federal claims will fail because a finding that the statements

Defendant Osten made about plaintiff were true operates as a complete defense to the claims asserted against her and, thus, the Town, with regard to the damage those statements allegedly caused." *Id.* at 3-4.  Finally, Defendants argue that one of Plaintiff's claims in his federal action is that Defendant Osten "forc[ed] him 'to incur the expense and anxiety of being named publicly in a vexatious lawsuit,'" but whether that lawsuit is vexatious or not cannot be determined until it is resolved. *Id.* at 4.  Thus, "in the interest of judicial economy, defendants respectfully request that this court dismiss and/or stay the present action until there has been a resolution of the prior pending state action between these parties." *Id.*

The Court denies Defendants' Motion to Dismiss based on application of the "prior pending action" doctrine, because, as Plaintiff rightly points out, and as Defendants concede, that doctrine applies *only* when both cases are brought in federal district courts.

The prior pending action doctrine is well-settled in this Circuit, and as the Second Circuit stated long ago, "[w]e believe it to be a sound rule that the issues should be tried <u>in the district where suit is first brought</u> unless there are other factors of substance which support the exercise of the court's discretion that the balance of convenience is in favor of proceeding first <u>in another district</u>." *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 (2d Cir. 1965) (emphasis added).  The Second Circuit has never waivered from this presumption in favor of proceeding in the first-filed federal action over a second-filed federal action, absent "other factors of substance." *Id.*; *see First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) (affirming dismissal based on a first-filed case in Western District of

Oklahoma because of the "well-settled principle in this Circuit that 'where there are two competing [federal] lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second.'") (citing cases); *Gyadu v. Hartford Ins. Co.*, No. 97-7720, 1998 U.S. App. LEXIS 1230, at *3 (2d Cir. Jan. 28, 1998) (affirming dismissal because "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action <u>pending in another district court</u>") (citation omitted) (emphasis added); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is <u>duplicative of another federal court suit</u>.") (citing *Colorado River*, 424 U.S. at 817 (emphasis added)); *Ziemba*, 167 F. App'x at 832 ("A district court may stay or dismiss a suit <u>that is duplicative of another federal court suit</u> as part of its general power to administer its docket") (citing *Curtis*, 226 F.3d at 138).

These cases are reinforced by the United States Supreme Court's decision in *Colorado River*, where the Court, after noting the three ways abstention might be appropriate in a federal-state case, and noting that dismissing a federal case might also be appropriate based on "wise judicial administration" if exceptional circumstances exist, stated the general rule of district courts exercise of jurisdiction and noted that the rules were different as between two federal district courts and as between a federal and a state court:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.  The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in

the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. [It] was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it. . . . Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.  As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.  This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.  Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention.  The former circumstances, though exceptional, do nevertheless exist.

424 U.S. at 813-14.  Thus, while the presumption in wholly federal cases is that the second-filed federal action should be dismissed in favor of the first, the presumption in cases where concurrent federal and state cases exist is the opposite; namely, that the federal court should retain jurisdiction unless one of the three very narrow exceptions applies warranting the court's abstention, or unless "exceptional circumstances" apply warranting the court's abstention based on "wise judicial administration." *Id.*  Otherwise, district court's must respect "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.*

Plaintiff points out that "Defendants have not cited a single case in which a federal court has dismissed or stayed a federal court action involving federal constitutional claims based on the prior pending action doctrine because of the pendency of a separate lawsuit in state court in which no federal claims were at

25

issue." [ECF No. 19 at 8]. The Court, having reviewed every case cited by Defendants, agrees, and the Court's research has not revealed any case where the Second Circuit has affirmed a district court staying or dismissing a case based on a prior pending state case pursuant to the prior pending action doctrine.

However, although Defendants have affirmatively disclaimed application of *Colorado River* abstention in this case, calling it an "inapplicable doctrine" and "object[ing] to plaintiff's use of such law as it is outside the scope of defendants' motion to dismiss and/or stay these proceedings," [ECF No. 21 at 2 n.1], the Court may nonetheless *sua sponte* invoke *Colorado River* abstention if warranted under the circumstances. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999) (finding that district court may *sua sponte* address subject matter jurisdiction and applying *Colorado River* abstention principles).

Here, the Court stays the case until the state case is resolved, primarily because of the risk of conflicting verdicts in the two cases. First, the Court finds that the two cases are parallel, in that the same basic, underlying question is involved; namely, as Defendants point out, a "determination of (1) what happened to cause the $800,000 budget deficit, and (2) who is the party responsible." [ECF No. 15 at 13]. If Plaintiff caused the damage to the Town of Sprague's budget, then Defendant may not have violated Plaintiff's constitutional rights by alerting residents of the Town to Plaintiff's improper actions. Moreover, if Plaintiff is found in the state court action to be liable to the Town, then that action can hardly be

described as vexatious.  Conversely, if Plaintiff is exonerated in the state court action, he may well have actionable claims in the instant matter.

Second, a review of the *Colorado River* abstention factors indicates that a stay is advisable given that the state court action was filed first, and summary judgment has now been filed by Plaintiff Gentes.  Additionally, and most importantly, the Court is deeply concerned with the possibility of conflicting verdicts.  If the two cases are allowed to proceed to judgment independently, a situation could arise in which Plaintiff Gentes prevails on one or more claims in the instant matter while simultaneously being held liable in the state court action.  The possibility of this "piecemeal litigation" militates in favor of granting a stay of this case pending the outcome of the state case.  *See U.S. Bank Nat'l Ass'n v. East Fordham DE LLC*, 804 F. App'x 106, 108 (2d Cir. 2020) (affirming district court's staying litigation on *Colorado River* grounds when the cases were parallel and the parties "w[ould] have to litigate the same issues, proffering the same evidence, at the state and federal levels," and when the state case was filed first); *Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 52-53 (2d Cir. 2020) (affirming district court's abstaining from litigating case in light of parallel state case because "the danger of piecemeal litigation was very strong and arguably the key factor" and noting that "avoiding piecemeal litigation may be the paramount consideration under certain circumstances") (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 210 (2d Cir. 1985)).  None of the other *Colorado River* factors militate against staying this litigation

In sum, the Court DENIES Defendants' motion to dismiss or stay this case based on the prior pending action doctrine, but *sua sponte* stays this case pending resolution of the parallel state case pursuant to *Colorado River*.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or stay this case, [ECF No. 15], is GRANTED-IN-PART.  The Court stays this case pending resolution of the state court case.  The Clerk is directed to administratively close this case without prejudice to either party moving to reopen proceedings in this matter within 90 days of final disposition of the state court case.


IT IS SO ORDERED

_____*/s/*_____

Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: July 27, 2021

28